IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

HOWE INVESTMENT, LTD.           *
                                                      *
Plaintiff                             *         **Civil No. 97-1864(SEC)**
                                                      *
v.                                           *
                                                      *
PEREZ Y CIA. DE PUERTO RICO, INC.   *
                                                      *
Defendant                       *
*************************************



## OPINION AND ORDER

This case is before the Court on the magistrate judge's report and recommendation regarding defendant Pérez & Cía. de Puerto Rico, Inc.'s (hereinafter "Pérez") motion to disqualify Benny Frankie Cerezo as attorney for plaintiff Howe Investment, Ltd. (hereinafter "Howe"). For the reasons set forth below, and after *de novo* review, the Court denies Pérez's motion to disqualify **(Docket # 38)**.

**Factual and Procedural Background**

The following facts are stated merely to provide the necessary background and should not be deemed established for purposes of the issues involved in the parties' pending cross-motions for summary judgment. Pérez is a corporation organized under the laws of the Commonwealth of Puerto Rico. Until recently, Pérez's business included the provision of stevedoring services. Pérez conducted its stevedoring operations at a pier (hereinafter the "Property") which until 1999, belonged to the United States Navy (hereinafter the "Navy"). Pérez sub-leased the Property from Puerto Rico Drydock & Marine Terminals, Inc. (hereinafter "Drydock"), who, as prime tenant, leased it from the Navy.



AO 72A
(Rev. 8/82)



**Civil No. 97-1864(SEC)**                                                                 2

By 1988, Drydock was facing financial difficulties which imperiled the continuation of its lease with the Navy and, consequently, Pérez's sub-lease. Because it wanted to continue to occupy the Property, Pérez decided that its interests would be best served if it bought Drydock's stock and leased the Property directly from the Navy. However, Howe already had a pre-existing option to buy Drydock's outstanding stock. Hence, on December 10, 1990, Pérez, Howe and the shareholders of Drydock entered into a stock release agreement ("Contrato de Liberación de Acciones"), whereby Howe agreed to surrender its option in consideration of $4,250,000. Simultaneously on December 10, 1990, Pérez and the shareholders of Drydock entered into a stock purchase agreement, whereby Pérez acquired Drydock's outstanding stock. Both contracts set a closing date of March 31, 1991; payment of the $4,250,000 was to be made on this date. Performance of the contracts, however, was made contingent upon the Navy's extension of a lease for the Property to Pérez, on terms and conditions substantially similar to those of the existing lease at that time.

Contrary to the parties' expectations, the Navy did not execute a lease with Pérez by March 31, 1991. Rather, on April 25, 1991, the Navy offered to negotiate a lease for a term of five years, with a unilateral option to extend it for a sixth year. As a result, Pérez, Howe and the shareholders of Drydock agreed to modify the stock release agreement as to the date that payment of the $4,250,000 was to be made. The parties executed an "Addendum" to the stock purchase agreement setting forth a schedule for the payment of the $4,250,000 in three installments. Pérez made the first two installments, but allegedly defaulted on the last one. As a result, Howe filed this action on June 5, 1997.

Against this background, Pérez moved to disqualify attorney Cerezo on the ground that Cerezo had allegedly represented Pérez in 1993, in connection with certain negotiations with the

**Civil No. 97-1864(SEC)**                                                                                                    3

Navy for the acquisition of the Property. During this representation, Pérez further alleges, Cerezo was privy to confidential information about Pérez that is relevant to this case. While the magistrate judge in his report did not make any specific finding with regards to Pérez's allegations, it may be inferred that he did so impliedly in stating that Pérez had made "a sufficient showing as to the type and nature of the confidences that were shared within an implied attorney-client relationship with Attorney Cerezo."[1] (**Docket # 116**, at 3). The magistrate judge found that "a shadow of doubt ha[d] been cast" upon Cerezo which warranted his disqualification. (**Id.**). He finally noted that "[a]n attorney who has undertaken successive representations of clients with adverse interests on substantially related matters has been conclusively presumed to be privy to relevant confidential disclosures." (**Id.** at 4). From this statement, it may be inferred that the magistrate judge found that a previous attorney-client relationship existed between Cerezo and Pérez.

Howe subsequently objected to the magistrate judge's report and recommendation (**Docket # 125**), and Pérez replied (**Docket # 137**). In its reply, Pérez contends that Howe's objections are based on arguments that it had not raised before. This contention is misleading. Howe does not raise in its objections brief any argument which is not explicitly or impliedly contained in its previous filings. Accordingly, the Court will consider all the arguments raised by the parties.

In August, 1993, Pérez sought counsel to assist it in conducting negotiations with the Navy to purchase the Property that it was leasing. (**Docket # 38**, Affidavit of Francisco J. García Rueda at ¶ 2 (hereinafter "García Aff.")). Pérez general manager, Francisco J. García Rueda, asked Pérez's

---

[1] In this regard, the magistrate judge also stated that Pérez's brief in support of its motion to disqualify was "well taken." (**Docket # 116**, at 4).

**Civil No. 97-1864(SEC)**                                                                                                   4

attorney, Gerardo Carlo,[2] to assist Pérez in locating and retaining Washington, D.C. counsel to represent it in the negotiations. (**Id.** at ¶ 3; **Docket # 44**, Sworn Statement of Benny Frankie Cerezo in Reply to Motion Seeking Disqualification of Plaintiff's Counsel at ¶ 2 (hereinafter "Cerezo's Statement"). Carlo consulted with Cerezo,[3] who suggested three candidates, among them, the Washington, D.C.-based firm Alexander Gebhart Aponte and Marks. Cerezo recommended this firm because he knew that Mari Carmen Aponte, one of the partners, was part of the transition team of the newly elected President, William "Bill" Clinton; also, because his son had worked there as a summer intern, and had a good relationship with Mr. Marks, another partner. (**Id.** at ¶ 5).

García agreed to meet Aponte, and Cerezo arranged for them to meet in Washington, D.C. (**Docket # 38**, García Aff. at ¶ 4; **Docket # 44**, Cerezo's Statement at ¶ 6). Cerezo also arranged for Carlo and García to stay at the University Club, of which Cerezo was a member. In fact, Cerezo also traveled to Washington, D.C. and stayed at the University Club, because he wanted to take the opportunity to meet with Mr. Marks concerning a client of his. (**Docket # 44**, Cerezo's Statement at ¶ 7-8). On August 31, 1993, García, Carlo and Cerezo went to the law offices of Alexander Gebhart Aponte and Marks. From here, the parties' versions drastically differ.

According to Cerezo, he met with Mr. Marks in one office to discuss his client's affairs, while Carlo and García met with Aponte and another lawyer in a different office. Cerezo states that

---

[2] At the present, Gerardo Carlos is the Chief Bankruptcy Judge for this district.

[3] At the time, Cerezo had recently returned to his practice of law in Puerto Rico after having spent more than three years in Washington, lobbying for statehood. During this period, Cerezo became closely related to various Washington attorneys. (**Docket # 44**, Sworn Statement of Benny Frankie Cerezo in Reply to Motion Seeking Disqualification of Plaintiff's Counsel at ¶ 2 (hereinafter "Cerezo's Statement").

AO 72A
(Rev. 8/82)

**Civil No. 97-1864(SEC)**                                                                                           5

he was never present during any discussion about Pérez's concerns; that he was never privy to any confidential information about Pérez's relationship with its lawyers, its problems or business. (**Docket # 44**, Cerezo's Statement at 11-12). Moreover, according to Cerezo, he met García through Carlo, and was never introduced as Pérez's attorney, or as somebody associated with Pérez; that he has never entered into any kind of professional relationship, express or implied, with Pérez. (**Id.** at 11, 13). During his stay in Washington, D.C., Cerezo once accompanied Mr. Carlos Romero Barceló to the offices of the Navy. On another occasion drove with Mr. Luis Guinot, Jr. to the Navy building. According to Cerezo, he believed that Mr. Romero Barceló and Mr. Guinot were intervening on behalf of Pérez in the negotiations to acquire the Property, but he did not learn about any confidential information in this regard. (**Id.** at ¶ 13; **Docket # 38**, Affidavit of Dana M.S. Wilson).

To the contrary, in his affidavit, García asserts that he, Carlo and Cerezo met with Aponte and two of her associates for approximately one and a half hours, and that during this meeting he disclosed confidential information about Pérez. According to García: "I felt that I could freely discuss the confidential business circumstances and information pertinent to the contemplated transaction because I knew I was talking with my [l]awyers and I expected that anything I discussed would be privileged." (**Id.**). García states, moreover, that during his two-day stay in Washington, D.C., he and Carlo had numerous discussions that included Cerezo, the specific content of which he cannot recall, but which involved the Navy's lease contract, the possibility of purchasing the Property, and the investment that Pérez was prepared to make in the installations. (**Id.** at ¶ 7). Finally, García asserts that he did not refrain from speaking openly about these issues, because he thought that Cerezo was an attorney for Pérez. (**Id.** at ¶ 8).

**Civil No. 97-1864(SEC)** 6

**Applicable Law/Analysis**

The parties agree that the Model Rules of Professional Conduct of the American Bar Association control the issue at hand,[4] to wit: whether Cerezo should be disqualified from representing Howe against Pérez on account of the allegedly privileged information he had previously learned from Pérez. Model Rule 1.9 mandates that "[a] lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation." Thus, in order to determine whether a particular situation warrants disqualification, the court needs to ascertain whether a previous attorney-client relationship exists, and if so, whether the prior and the present representations are substantially related. See Polyagro Plastics, Inc. v. Cincinnati Milacron, Inc., 903 F. Supp. 253, 256 (D.P.R. 1995) (hereinafter "Polyagro"). In ruling upon a motion o disqualify, the court must balance two competing interests: (1) the right of a party to an attorney of his or her own choosing, and (2) the protection of the integrity of the judicial process. Id. Of course, "the moving party bears the burden in a motion to disqualify." Starlight Sugar, Inc. v. Soto, 903 F. Supp. 261, 266 (D.P.R. 1995) (citation omitted).

With regards to the first prong, the former attorney-client relationship may be explicit or implied. Hence, "[a] party does not need to produce a formal contract or fee payment to establish an attorney-client relationship." Polyagro, 903 F. Supp. at 256 (citation omitted). "A fiduciary relationship in which client confidences must be protected may arise from a 'preliminary

---

[4] The Model Rules of Professional Conduct of the American Bar Association have been adopted by this Court. See P.R. Loc. R. 211.4(B).

**Civil No. 97-1864(SEC)**                                                                                                    7

consultation by a prospective client with a view to retention of a lawyer, although actual employment does not result.'" Id. (quoting Westinghouse Elec. Corp. v. Kerr-McGee, 580 F.2d 1311, 1319 (7th Cir.), cert. denied 439 U.S. 955 (1978). It is not disputed that, in this case, Cerezo did not have an explicit attorney-client relationship with Pérez. Consequently, the Court must determine whether an implied attorney-client relationship existed.

"A party may establish an implied attorney-client relationship if (i) the party submitted confidential information to the attorney, and (ii) the party did so with the reasonable belief that his lawyer was acting as the party's attorney." Polyagro, 903 F. Supp. at 256 (citations omitted). For purposes of a motion to disqualify, confidential information "is information that if revealed could put [one party] at a disadvantage or the other party at an advantage." Id. at 258. Whether the former representation was explicit or implied is rather significant to the disqualification inquiry. When the attorney-client relationship is explicit, the court must assume "that during the course of the former representation confidences were disclosed to the attorney bearing on the subject matter of the representation." Kevlik v. Goldstein, 724 F.2d 844, 850 (1st Cir. 1984), quoted in Polyagro, 903 F. Supp. at 256 (internal quotation marks omitted). However, when the former relationship is an implied one, such presumption does not follow, and the court "must inquire into the substance of the information that passed between [the party and the attorney]." Polyagro, 903 F. Supp. at 257.

Pérez's motion is grounded on the contention that Cerezo was present during the meeting between García, Carlo, Aponte and her associates, in which García allegedly disclosed the following purportedly privileged information: Pérez's analysis of the then-present status of the Property and the lease with the Navy; Pérez's explanation of the problem it sought to address by retaining a new law firm; Pérez's valuation and financial analysis concerning the Property; Pérez's evaluation and

AO 72A
(Rev. 8/82)

**Civil No. 97-1864(SEC)**                                                                                       8

comparative analysis of the economic benefits of purchasing the Property versus continuing to lease it; Pérez's internal evaluation of its own financial status; the specific figures that Pérez was willing to pay to purchase the Property; and strategic and business considerations that were important to Pérez in negotiating with the Navy. Pérez further alleges that during their stay in Washington, D.C., Carlo and García had numerous conversations in the presence of Cerezo, during which confidential information was disclosed. To bolster its contention that Cerezo was privy to privileged information, Pérez points to several occurrences during the proceedings in this case that purportedly lead to the conclusion that Cerezo must have been acting upon confidences obtained from García, to wit: discovery requests and questions posed to García during the taking of his deposition. Cerezo strongly denies having been present during the meeting between García, Carlo, Aponte and her associates. He further denies having been privy to confidential information disclosed during conversations between Carlo and García. If the Court were to accept Cerezo's statements over García's it would inevitably have to conclude that an attorney-client relationship did not exist between Cerezo and Pérez, and thus deny the instant motion outright.[5] However, while the Court is not required to do so, it will take García's statements as true for purposes of this motion. See Polyagro, 903 F. Supp. at 257 (viewing the evidence in the light most favorable to the movant in ruling upon a motion to disqualify).

---

[5] Dana M.S. Wilson's affidavit stating that at one time Cerezo accompanied Mr. Romero Barceló to the offices of the Navy, and on another occasion drove with Mr. Guinot to the Navy building, and that Cerezo believed that Mr. Romero Barceló and Mr. Guinot were intervening on behalf of Pérez in dealings with the Navy is so general and vague in nature that the Court fails to see the relevance of including it as part of the instant motion. However, even taking such affidavit as true, it does not establish that Cerezo obtained any privileged information about Pérez in connection with this action.

The Court first notes that Pérez's allegation that Cerezo was privy to confidential information revealed during conversations between Carlo and García is simply that, an allegation. "[T]he mere <u>allegation</u> that confidential information was exchanged in a prior representation will not suffice to [demonstrate that confidences were shared]." <u>Starlight Sugar, Inc.</u>, 903 F. Supp. at 266. Of the remaining confidential information allegedly disclosed to Cerezo by García, some is "of a general and vague nature," and, therefore, insufficient to warrant disqualification, and some simply "does not constitute the requisite 'confidential information' needed to create an implied attorney-client relationship between [Cerezo and Pérez]." <u>Polyagro</u>, 903 F. Supp. at 258.

Pérez's analysis of the then-present status of the Property and the lease with the Navy was hardly confidential. As it is demonstrated by the circumstances leading to the execution of the Addendum to the stock release agreement between Pérez, and Howe, it was evident at the time that Pérez was facing difficulties in trying to obtain a more favorable deal from the Navy with regards to the Property. Pérez's explanation–which substance is not relayed in García's Affidavit–of the problem it sought to address by retaining a new law firm is also far from confidential. García may have presumptively explained that Pérez was facing difficulty in obtaining a more favorable lease for the Property, and that it needed to retain a law firm with the right contacts with the Navy. There is nothing confidential about this; it only demonstrates a company's interest in dealing with a problem through the most competent and well-placed attorneys available.

García's allegations that he disclosed Pérez's valuation and financial analysis concerning the Property; Pérez's evaluation and comparative analysis of the economic benefits of purchasing the Property versus continuing to lease it; Pérez's internal evaluation of its own financial status; the specific figures that Pérez was willing to pay to purchase the Property; and strategic and business

**Civil No. 97-1864(SEC)**                                                                 10

considerations that were important to Pérez in negotiating with the Navy are all lacking in substance. Moreover, some of this information could have been obtained by Cerezo, or almost anyone, from sources other than García, and some, even if revealed, could hardly be deemed to place Howe in an advantageous position against Pérez, or Pérez in a disadvantage.

A valuation and financial analysis of the Property could have been obtained through independent means; the fact that it may have been performed by Pérez is of no consequence. Pérez's evaluation and comparative analysis of the economic benefits of purchasing the Property versus continuing to lease it has no bearing in this case. One of Pérez's main defenses to Howe's complaint is that an alleged condition precedent–that the Navy enter into a renewed lease contract with Pérez after the expiration of the lease executed after the stock release agreement–was not met. Pérez's balancing of the advantages and disadvantages of purchasing the Property versus continuing to lease it is immaterial, because such condition, according to the allegations in Pérez's answer to the complaint and in its motion for summary judgement, was never met. So, even assuming, as Pérez avers, that payment of the monies claimed by Howe in the complaint was contingent upon a renewed lease for the Property, the fact is that such condition never materialized, regardless of whether Pérez had at some point considered the alternative of purchasing the Property. For the same reason, the specific figures that Pérez was willing to pay to purchase the Property have no relevance to this action.

Regarding García's assertion that he disclosed Pérez's internal evaluation of its own financial status, this information could have been obtained from the Commonwealth of Puerto Rico Department of State, where all corporations organized and existing under the laws of the Commonwealth must filed their annual financial statements. Presumptively, Pérez has at all times

Civil No. 97-1864(SEC)                                                                                              11

complied with this statutory obligation. Furthermore, García's allegation that he disclosed information about strategic and business considerations that were important to Pérez in negotiating with the Navy says nothing about the substance of such information. Finally, regarding Pérez's references to Howe's discovery requests and Cerezo's questions during the taking of García's deposition, neither of them lead to the conclusion that Cerezo must have been acting upon privileged information.

Accordingly, the Court finds that even assuming that García passed the above-mentioned information to Cerezo, such information is insufficient to create an implied attorney-client relationship between Cerezo and Pérez, and thus, there is no need to disqualify Cerezo.[6] Pérez alternatively argues that Cerezo should be disqualified on the ground that he obtained said information while acting as Pérez's agent for purposes of facilitating Pérez's evaluation of Aponte's prospective rendition of legal services. Because the Court's conclusion that no attorney-client relationship existed between Cerezo and Pérez is premised on the finding that the information allegedly disclosed to Cerezo was not confidential information for purposes of a motion to disqualify, Pérez's alternative argument must fail. Moreover, the Court finds it farfetched to try to

---

[6] The Court also notes that all the information allegedly disclosed to Cerezo is the kind of information that parties to a contract such as the stock release agreement (together with the Addendum) between Pérez and Howe would have exchanged. It is hard to believe that Howe would have entered into a four and a quarter of a million dollar contract with Pérez without having required Pérez to disclose information about its financial situation. It is also hard to believe that Howe would have agreed to make the contract contingent (as Pérez alleges) upon Pérez's obtaining a favorable lease for the Property with the Navy, without having informed itself about the value of the Property, the importance of the Property for Pérez's operations, and, most of all, Pérez's ability to negotiate with the Navy. Finally, the Court is hesitant to accept that such information, allegedly disclosed four years prior to the filing of this case, is relevant to the controversies involved.

**Civil No. 97-1864(SEC)**                                                                                      12

establish an agency relationship from Carlo's asking Cerezo for a recommendation for competent, well-placed attorneys in the Washington, D.C. area.

Normally the Court would not elaborate upon the applicable standard of review. However, since this has apparently become an issue, the Court will do so. The Federal Magistrates Act grants district courts the authority to delegate certain matters to magistrate judges. See 28 U.S.C. § 363(b)(1). Rule 72 of the Federal Rules of Civil procedure is designed to implement this authority. Pursuant to section (a) of the rule, a magistrate judge can "hear and determine" all referred pretrial matters which are "not dispositive of a claim or defense of a party." Fed. R. Civ. P. 72(a); see also Phinney v. Wentworth Douglas Hospital, 199 F.3d 1, 5 (1st Cir. 1999). With regards to matters assigned without the consent of the parties which are dispositive of a claim or defense, section (b) only allows the magistrate judge to make "a recommendation for disposition of the matter, including proposed findings of fact when appropriate." Id. (b); see also Phinney, 199 F.3d at 5. The rule further provides that, upon review, the district shall modify or set aside a magistrate judge's order, or any portion thereof, only if "found to be clearly erroneous or contrary to law." Id. (a); see also Phinney, 199 F.3d at 5. Review of a magistrate judge's proposed findings and recommendation on a dispositive matter is *de novo*. See id. (b); see also Phinney, 199 F.3d at 5.

The terms dispositive and nondispositive, as used in Rule 72, are construed in accordance with the classifications set forth in 28 U.S.C. 636(b)(1). See Phinney, 199 F.3d at 5 (citations omitted). Dispositive motions are generally those excepted under section 636(b)(1)(A), among them: motions for injunctive relief, for judgment on the pleadings, for summary judgment, and to dismiss. See 28 U.S.C. § 636(b)(1)(A). Because motions to disqualify are not within those specifically enumerated in section 636(b)(1)(A), and because "they are not of the same genre as the

**Civil No. 97-1864(SEC)**                                                                                         13

enumerated motions," Phinney, 199 F.3d at 6, a magistrate judge would be authorized under Fed. R. Civ. P. 72(a) to rule upon them as nondispositive.

Accordingly, Pérez argues that the Court's review of the magistrate judge's report and recommendation is governed by the clearly-erroneous-or-contrary-to-law standard. **(Docket # 137, at 5).** In the particular circumstances of this case, however, this argument must fail. In its order of referral, the Court stated: "Defendant's motion seeking the disqualification of [a]ttorney Benny Frankie Cerezo . . . is hereby referred to [the magistrate judge] for the holding of a hearing and **the issuance of a [r]eport and [r]ecommendation**." **(Docket # 76, at 2)** (emphasis added). As stated elsewhere, "[t]o the extent a district judge is concerned about the possibility that assigning a nondispositive matter to a magistrate judge will confine his or her power to revise the outcome, a reference directing the magistrate judge to make recommendations is possible." 12 Charles Alan Wright et al., Federal Practice and Procedure § 3069, at 355-56 (2d ed. 1997).

> That certain case dispositive matters must always be referred for recommendations rather than determination does not mandate the converse, i.e., that nondispositive matters must always be referred for determination rather than recommendations. It is evident from the [Federal Magistrates] Act's legislative history that the purpose of the Act's referral and review provisions is to define the limits of the powers which a court may allow a magistrate to exercise, not to restrict the ultimate authority of an Article III court over a case pending before it.

Delco Wire & Cable, Inc. v. Weinberger, 109 F.R.D. 680, 685 (E.D.Pa. 1986), quoted in 12 Wright et al., supra, § 3069, at 356. Thus, when a district court judge refers a nondispositive matter to a magistrate judge specifically for recommendation–even though the matter could have been referred for determination–review is plenary, more so when the magistrate judge does not hold a hearing on the matter, nor does he or she conduct an in camera inspection of any documents in relation thereto. See id. at 686. In this case, Howe initially anticipated submitting certain testimony to the magistrate

judge for an in camera review, but it subsequently declined to do so. (**Sealed Dockets ## 84, 87**). Moreover, while the magistrate judge held a hearing on Pérez's motion, no evidence was presented thereat; the magistrate judge heard argument on behalf of the parties, and counsel agreed that the matter would be submitted and decided on the briefs.[7] (**Docket # 108; Docket # 116**, at 2). This is why the Court has reviewed the magistrate judge's report and recommendation *de novo*.

For the foregoing reasons, the Court declines to adopt the magistrate judge's report and recommendation (**Docket # 116**), and hereby **DENIES** Pérez's motion to disqualify (**Docket # 38**).

**SO ORDERED.**

In San Juan, Puerto Rico, this 25 day of May, 2000.

SALVADOR E. CASELLAS
United States District Judge

---

[7] The magistrate judge based his report and recommendation on Pérez's motion to disqualify (**Docket # 38**), Howe's opposition (**Dockets ## 44 and 45**), Pérez's reply thereto (**Docket # 80**), and Howe's sur-reply (**Docket # 77**).

AO 72A
(Rev. 8/82)